[Civ. No. 8016.   Third Dist.   June 6, 1952.]

FRED PHILLIPS et al., Appellants, v. CHARLES A. ISHAM et al., Respondents.

Nichola H. Dubsick and William J. Whalen for Appellants.

Chester F. Gannon and Cecil J. Bishop for Respondents.

PEEK, J.—This controversy arises out of the admitted encroachment by defendants upon plaintiffs' property. The judgment of the trial court required defendants to pay plaintiffs the sum of $250 within 20 days and that on compliance therewith defendants would be declared to be the owners of the land in question but in the event of default in such payment that plaintiffs have judgment quieting their title, that the encroachments be removed from their property and that defendants pay to them the sum of $1.00 as damages.

Plaintiffs' sole contention upon appeal, which appears to be well founded, is that under the facts as disclosed by the

record the trial court erred in finding that the cost of removing the encroachments and the resultant injury and inconveniences to defendants would greatly exceed in comparison the loss and damage sustained by plaintiffs.

The facts pertinent to the question presented and which are not in dispute show that plaintiffs and defendants are the owners of adjoining lots numbered 23 and 24 respectively. The plot of the lots shows each to have a 50-foot frontage on Redwood Avenue. Taxes have been levied and paid according to the plat lines. Originally both lots were owned by the North Sacramento Land Company. Lot number 24 was sold to defendants in 1921. At the time of sale the agent of the land company pointed out to defendants the easterly boundary of the lot. Immediately thereafter defendants planted a hedge along the boundary as shown to them, and commenced the construction of a garage at the rear of the lot, likewise along the purported boundary. Mr. Isham described the garage as smaller than an ordinary one car garage, of frame construction and without a foundation. Following the completion of that structure they built their home, which was remodeled in 1923 by adding a room, a carport and the main entrance to the home. The carport which is of frame and stucco construction was not built as an integral part of the structure of the house but is merely attached thereto. Since that time the garage has been used as a shop.

When plaintiffs purchased Lot 23 in 1948 it was unimproved. They testified that although they looked at the property they did not ascertain the true boundary thereof until after plans had been drawn for the construction of two housing units, one for their own use and the other for rental. The larger of the two units was to be 40 feet wide which, together with a 5-foot setback from each side boundary required by a city ordinance, necessitated the use of the entire 50 feet. The survey disclosed that a triangular area had been carved out of their lot by defendants; that is, while their lot measured the full 50 feet along the alley at the rear thereof, the width of the lot along the front as measured to the hedge planted by defendants, reduced plaintiffs' frontage to approximately 42 feet 4 inches. This precluded plaintiffs from using the lot as they had contemplated and consequently compelled them to alter their plans by moving the foundation of the smaller unit and foregoing the construction of the larger unit. The survey also shows that defendants' garage or shop extends

approximately 2 feet onto appellants' land, and that the greatest extent of the encroachment of the carport is approximately 4 feet 5 inches. Immediately upon discovery of the facts shown by the survey plaintiffs instituted this proceeding.

The evidence further shows that although the removal of defendants' carport would render the driveway too narrow to accommodate an automobile, access to their lot could be had by use of the alley at the rear. Whether or not there would be sufficient space for a driveway on the opposite side of the lot is not clear from the record. The only evidence concerning the cost of removal of the encroachments was given by plaintiffs' contractor, one C. C. McCurry, who testified that the approximate cost of such removal would not exceed $180.

Upon these facts the court found that the plaintiffs were the owners of said Lot 23; that defendants' claim to the triangular strip in question was without right; that by reason of defendants' placing said structures on plaintiffs' land the latter had been damaged in the sum of $250; that the cost of removing the structures and the resultant injury and inconvenience to defendants would greatly exceed in comparison the damage sustained by plaintiffs and that the defendants acted in good faith in erecting the encroachments in question.

It is the general rule in this state that while the right to injunctive relief under proper circumstances is well established "its issuance is largely discretionary with the court and depends upon a consideration of all the equities between the parties." (1 Cal.Jur.2d 740.) In other words, no hard and fast rule can be adopted which will fit all cases and hence each must be determined upon its own peculiar facts.

An examination of the various cases cited and relied upon by respondents in support of the judgment show factual situations far different from those presented in the present case. Here, as in *Morris* v. *George,* 57 Cal.App.2d 665 [135 P.2d 195], the defendants, without right, built partly upon the adjoining land of plaintiffs and the only evidence of the cost of removal of the same was substantially less than the loss of nearly 8 feet from the frontage of plaintiffs' lot or approximately one-sixth of the street frontage. As this court stated at page 680: "It is only in cases where it would involve great difficulty and expense to relieve a trivial en-

croachment causing only slight damage that a court is justified in refusing a mandatory injunction where one party has invaded the property rights of another. Boundary lines are still boundary lines and an adjoining landowner may not without right build a concrete stop-gate in a ditch so that it extends over into and encroaches upon the property of his neighbor, and then prevent his neighbor from securing an injunction ordering its removal to the extent that it does encroach." (See, also, *Marcus* v. *Brody*, 254 Mass. 152 [149 N.E. 673].)

The present case is not one in which a mandatory injunction can be denied on the basis that the injury and inconvenience to defendants will greatly exceed the loss and damage sustained by plaintiffs if the condition is allowed to continue.

The judgment is reversed.

Adams, P. J., and Van Dyke, J., concurred .